United States District Court
Southern District of Texas
**ENTERED**
June 02, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEDRO ERNESTO UMANA, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1421 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his conviction and fifty-year sentence for aggravated sexual assault. Respondent filed a motion for summary judgment (Docket Entry No. 34), to which petitioner filed a response (Docket Entry No. 38).

Having reviewed the motion, the response, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this case for the reasons that follow.

### I. PROCEDURAL BACKGROUND AND CLAIMS

A jury found petitioner guilty of aggravated sexual assault in Harris County, Texas, on February 22, 2013, and assessed punishment at fifty years' incarceration. The conviction was affirmed on appeal, *Umana v. State*, 447 S.W.3d 346 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd), and discretionary review was refused. Petitioner's application for state habeas relief was denied by the Texas Court of Criminal Appeals in August 2016.

Petitioner raises the following claims for relief in this federal habeas petition:

1. His videotaped pretrial statement was involuntary.

2. Trial counsel was ineffective in not pursuing an insanity defense.

3. His pretrial statement was improperly admitted.

4. Trial counsel was ineffective in not properly arguing the motion to suppress.

Respondent argues that these claims should be dismissed as procedurally defaulted and/or without merit.

## II. FACTUAL BACKGROUND

The intermediate state court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction:

> The complainant and two friends were at her apartment when three people forced their way in with a handgun. The intruders were subsequently identified as [petitioner], his sister and her husband. [Petitioner] held the complainant and her friends at gunpoint while the intruders ransacked the apartment. [Petitioner] directed the complainant into her bedroom while holding her at gunpoint and sexually assaulted her.
>
> The investigation led police to [petitioner]. Approximately 16 hours after the robbery and assault, [petitioner] waived his rights and gave a statement to police that was recorded on video. Three days later, a judge ordered a psychological review of the [petitioner], as [petitioner] self-reported that he was hearing voices telling him to do bad things and had a prior diagnosis of bipolar disease and schizophrenia. [Petitioner] received medication while in custody.
> Five months after the offense, [petitioner] was evaluated for competency by Dr. Stephen McCary pursuant to court order. Dr. McCary found [him] incompetent to stand trial. [Petitioner] was admitted to North Texas State Hospital for psychiatric treatment.

2

> Fourth months later, Dr. Jennifer L. Russell evaluated [petitioner] and found he was competent to stand trial. The trial court found [his] competency had been restored on November 20, 2011, and his trial began the following September.
>
> [Petitioner] filed a motion to suppress his video-taped statement on the grounds he was unable to voluntarily waive his rights because he was mentally ill. Following a hearing, the trial court denied [petitioner's] motion and the video-taped statement was admitted into evidence and played to the jury.

*Umana,* 447 S.W.3d at 349.

### III.  LEGAL STANDARDS

A.  <u>Habeas Review</u>

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U .S.C. § 2254.  Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying

factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

      B.      <u>Summary Judgment</u>

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings.  Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant.  Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV.  INVOLUNTARY PRETRIAL STATEMENT

Petitioner claims that his videotaped pretrial statement was made involuntarily because he was mentally ill and incompetent at the time. Although he admits he waived his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966) for purposes of the statement, he claims that his mental incompetency rendered the waiver invalid.

Petitioner concedes that no expert witness testified that he was incompetent when he gave his statement. He argues that, even so, "If the trial court found [me] incompetent after [my] confession, then [I] was in fact incompetent when [I] waived [my] *Miranda* rights and provided the involuntary confession." (Docket Entry No. 38, p. 2.) In other words, petitioner contends that he was incompetent when he gave his statement because he was incompetent after he gave his statement. As "proof" of his incompetency, petitioner points to the fact that the trial court ordered a psychological/medical examination three days after the videotaped statement. However, contrary to petitioner's argument, the record shows that the trial court did not order a *competency* evaluation and it made no competency determination at that time.         The trial court did not find petitioner incompetent to stand trial until five months after his videotaped statement. The record shows that petitioner waived his rights and gave the videotaped pretrial statement on January 11, 2011. He was declared incompetent following a competency evaluation on June 24, 2011. The trial court subsequently found that petitioner's competency was restored on November 20, 2011, and ordered the case set for trial. The incompetency finding of June 24, 2011, did not determine

that petitioner was mentally incompetent five months earlier when he gave his statement.

Petitioner's claim for a "retroactive" incompetency finding was rejected by the intermediate state court of appeals. As to the voluntariness of the videotaped statement at trial, petitioner

> introduced into evidence a 21–day order for a psychiatric evaluation, signed January 14, 2011, and two sets of medical records. The order reflects appellant self-reported hearing voices telling him to do bad things and that he had a prior diagnosis of bipolar disease and schizophrenia. The medical records dated before the statement was given demonstrate appellant referred himself to MHMRA of Harris County. The "Wait List Monitoring Assessments" reflect that appellant self-reported that he was treated psychiatrically while in jail three years earlier, where he attempted suicide; he took Lexapro, Depakote, and another unidentified medication; and the doctor talked to him about having bipolar disorder. Appellant also reported that his school said he was ADHD. The report states there is no history of psychiatric related hospitalizations and no prior outpatient psychiatric treatment. Further, the report states he does not meet the criteria for hypomanic or manic episodes.

*Umana*, 447 S.W.3d at 353–54.

The intermediate state appellate court found that petitioner voluntarily waived his rights with "full awareness of the nature of those rights and the consequences of waiving them." *Umana*, at 349–58. In holding petitioner's statement voluntary, the intermediate state court stated as follows:

> The issue before us, therefore, is not whether appellant waived his rights, but whether he did so knowingly, intelligently, and voluntarily. Appellant claims the evidence showed he suffered from untreated mental illness before his arrest and interrogation and was not restored to competency until eleven months after his arrest.

7

Appellant asserts the State offered no evidence that he understood his rights and knowingly, voluntarily and intelligently waived them. We disagree. McCary testified that appellant's lack of competency in June of 2011 did not necessarily indicate that he was incompetent before that time. McCary testified that it appeared appellant understood what was being said to him on the [pretrial statement video]. According to McCary, appellant "knew what was going on . . . [and] he seemed to understand what the officer was asking him . . . ." McCary testified appellant did not appear to be hallucinating or out of touch with reality during the video. Again, McCary said, "He seemed to understand what was going on." McCary also agreed that appellant was able to communicate; he was speaking in sentences and made sense. McCary testified that appellant had eye contact with the officers in the video but when he evaluated appellant in June, appellant did not maintain eye contact with him.

Varela testified that appellant understood he could choose whether to provide a DNA sample and made the choice not to give a sample. Varela said he never felt appellant did not understand the proceedings.

The video-taped statement is also evidence of appellant's state of mind at that time. The trial court viewed the video and from it was able to assess appellant's state of mind. To the extent appellant is arguing the State was not the sponsor of the evidence, that fact is not determinative. Evidence was presented and it either preponderates in favor of the trial court's determination or does not.

We find it does. Although appellant said at the close of the interview that he hears people talking to him and they tell him to do things, he did not claim, and there is no indication in the 47–minute interview, that he was having such an experience at the time of the interview. The subsequent finding of incompetency is a relevant factor to determining whether appellant's waiver was voluntary but it is not conclusive. In contrast to the later finding of incompetency is appellant's participation in the interview, which became more active as it continued, that demonstrates he understood the situation. Appellant's attempts to minimize his actions reflect his knowledge of the potential consequences, as does his refusal to provide a DNA sample. The level of detail appellant was able to provide regarding his actions during the robbery and assault reveal that he was capable of understanding his rights before waiving them. The trial court's findings and conclusions that appellant's waiver was made knowingly, voluntarily and intelligently are

8

> supported by the video-taped statement, as well as the evidence adduced at the hearing.
>
> Applying the appropriately deferential standard of review, we conclude the totality of the circumstances demonstrates, by a preponderance of the evidence, appellant's waiver of his rights was voluntarily made with full awareness of the nature of those rights and the consequences of waiving them. Accordingly, we find the trial court did not abuse its discretion in denying appellant's claims in his motion to suppress that his statement was involuntary for failure to comply with the Texas Confession Statute.

*Id*., at 356–358 (citations, footnotes omitted).

In determining the voluntariness of a confession under the Fifth Amendment, a reviewing court applies the "totality of the circumstances" approach. *Rogers v. Quarterman*, 555 F.3d 483, 491 (5th Cir. 2009). Under that standard, the court considers "the suspect's age, experience, education, background, intelligence, and whether the suspect has the capacity to understand the warnings given to him, the nature of his rights, and the consequences of waiver." *Id*. The court further considers "[t]he circumstances of the interrogation, such as its length, location, and continuity." *Id*. "A statement is involuntary if there existed official, coercive conduct that made it unlikely the statement was a product of the individual's free choice." *Id*.

The voluntariness of a confession is a legal determination, but may also involve underlying factual determinations and mixed issues of law and fact. *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998). The district court should defer to the state court's determination of voluntariness if it was not "contrary to, or involved an unreasonable

9

application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.*; 28 U.S.C. § 2254(d)(1).

In the instant proceeding, petitioner has not shown that the state court's determination was unreasonable or contrary to established federal law. Petitioner's assertion of being mentally incompetent at the time he gave his videotaped pretrial statement is conclusory and unsupported by probative evidence in the record. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case."). That petitioner was found incompetent on June 24, 2011, does not constitute proof that he was incompetent as of January 11, 2011.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claim.

## V. EVIDENTIARY ERROR

Petitioner next complains that his videotaped pretrial statement was improperly admitted at trial because the statement was taken after he had requested counsel. Respondent argues that this claim is procedurally defaulted.

In rejecting this claim on collateral review, the state trial court made the following relevant findings of fact:

9. In his second ground for relief, the applicant claims the State violated his rights to due process by admitting his custodial statement.

10

> 10. The applicant claims the statement was inadmissible because the investigators took the statement despite the applicant's unambiguous request for counsel.
>
> 11. Prior to trial, the applicant filed a motion to suppress his custodial statement.
>
> 12. The trial court held a pretrial hearing on the applicant's motion to suppress, during which the applicant argued that the statement was not voluntary, due to the applicant's mental capacity.
>
> 13. At no point during the motion to suppress did the applicant suggest the statement was made after the applicant requested counsel.
>
> 14. When the State offered the statement during trial, the applicant renewed his objection to the statement on the grounds that the statement was involuntary.
>
> 15. The applicant could have challenged the admissibility of the statement on this ground during the motion to suppress, and during trial, but failed to do so.

*Ex parte Umana*, at 38–39 (record citations omitted). The state trial court also made the following relevant conclusion of law:

> 3. The applicant's claim that the statement was inadmissible is procedurally barred because the applicant could have asserted this challenge during trial but failed to do so.

*Ex parte Umana*, at 39 (case citations omitted). The Texas Court of Criminal Appeals expressly relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

As noted by the intermediate state court of appeals in its opinion, officers Varela and Rivera questioned petitioner during his videotaped interrogation. Officer Varela read

11

petitioner his *Miranda* rights and asked, "Do you understand all your rights?" Petitioner nodded his head up and down and stated, "Uh-huh." *Umana*, at 351. Petitioner did not request counsel during the videotaped interrogation and statement.

Although petitioner raised this claim in his application for state habeas relief, the state habeas court found the issue procedurally barred because petitioner could have raised the issue at trial but failed to do so. Defense counsel raised numerous challenges to the videotaped statement, but denial of counsel was not among the challenges. *See Umana*, at 349–358 (discussing claims raised by petitioner at the suppression hearing). Consequently, the claim has been procedurally defaulted at this juncture, and petitioner shows no good cause and prejudice for the default.

Regardless, the claim lacks merit as nothing in the state court record establishes that petitioner requested counsel prior to commencement of the videotaped statement. Indeed, and as noted above, Officer Varela read petitioner his *Miranda* rights upon commencement of the videotaping. Petitioner indicated that he understood his rights, and he did not request counsel or ask to terminate the videotaping on the record. Petitioner's allegation that he requested counsel prior to commencement of the videotaping with Officer Varela is conclusory, unsupported in the record, and insufficient to warrant habeas relief.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination

of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claim.

## VI. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id*. at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id*. at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id*.

Credibility findings, such as those made by the state trial court on collateral review with respect to defense counsel's affidavit testimony, are entitled to substantial deference on federal habeas review. *See Coleman v. Quarterman*, 456 F.3d 537, 541 (5th Cir. 2006). Thus, the state court's factual findings and credibility determinations are presumed correct for purposes of federal habeas review unless they are rebutted with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) ("The presumption [of correctness] is especially strong when the state habeas court and the trial court are one in the same.").

Petitioner contends that trial counsel was ineffective in the following particulars.

A.  Failure to raise insanity defense

14

Petitioner argues that trial counsel was ineffective in failing to investigate and present an insanity defense. According to petitioner, had counsel pursued such an investigation and defense, the result of the trial would have been different. In raising this claim, petitioner necessarily contends that, had an investigation been undertaken, he would have been found legally insane at the time he committed the offense.

To prevail on an ineffective assistance of trial counsel claim predicated on a failure to investigate, a habeas petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998). "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983).

In the instant case, petitioner presents no probative summary judgment evidence that, had counsel undertaken the subject investigation, petitioner would have been found insane as of the time of the offense. The record shows that petitioner was medically evaluated shortly after his arrest, and that he was given medications. These facts, standing alone, do not indicate that petitioner would have been found legally insane at the time he committed

15

the offense. Petitioner's conclusory allegation that he would have been found legally insane had counsel undertaken an investigation is insufficient to warrant habeas relief or preclude the granting of summary judgment in favor of respondent. The inadequacy of petitioner's claim is underscored by the fact that the state courts rejected his argument that he was mentally incompetent when he gave his videotaped statement.

The state trial court found made the following relevant findings of fact on collateral review:

> 6. In his first ground for relief, the applicant claims he was denied the effective representation of trial counsel due to trial counsel's failure to investigate the applicant's sanity at the time of the offense and failure to raise insanity as a defense.
>
> 7. The applicant offers no proof that he was insane at the time of the offense.
>
> 8. The applicant fails to show what trial counsel would have discovered if trial counsel had investigated the applicant's sanity at the time of the offense.

*Ex parte Umana*, at 38 (record citation omitted). The state trial court also made the following relevant conclusions of law:

> 1. The applicant fails to show trial counsel was ineffective for failing to investigate the applicant's sanity at the time of the offense because the applicant fails to show what trial counsel would have found if trial counsel had investigated the applicant's sanity at the time of the offense.
>
> 2. The applicant's conclusory allegation that trial counsel was ineffective is not sufficient proof to warrant habeas corpus relief.

*Id.*, at 39 (case citations omitted). The Texas Court of Criminal Appeals expressly relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claim for ineffective assistance of trial counsel.

B.  <u>Failure to argue motion to suppress</u>

The trial court denied petitioner's motion to suppress his pretrial statement. Petitioner contends that the motion would have been granted had counsel properly argued the motion at the suppression hearing. Specifically, petitioner claims that trial counsel should have argued that, because the arrest was illegal, his statement was inadmissible as "fruit of the poisonous tree."

Respondent correctly argues that, because petitioner failed to raise this claim on direct appeal, in his petition for discretionary review, or on state habeas review, the claim is procedurally defaulted and barred from consideration by this Court. Even assuming the claim were not procedurally defaulted, it has no merit. Petitioner's claim is premised on the alleged illegality of his arrest. However, nothing in the record supports petitioner's conclusory allegation that his arrest was unlawful. As the sole basis for his contending his arrest was unlawful, petitioner proffers that he was arrested without a warrant. However, Officer Varela testified at trial that he obtained a "pocket warrant" for petitioner's arrest and

17

that the warrant was then executed by another officer who arrested petitioner. (Docket Entry No. 12-9, pp. 33–35.) Petitioner alleges no facts or applicable law showing that his arrest was unlawful. Consequently, he does not establish that, but for counsel's failure to raise this issue, there is a reasonable probability that the result of the trial would have been different. Petitioner fails to demonstrate deficient performance or actual prejudice under *Strickland*, and habeas relief is unwarranted.

Petitioner's ineffective assistance of trial counsel claim is unexhausted, procedurally defaulted, and barred from consideration by this Court. Moreover, it is without merit. Respondent is entitled to summary judgment dismissal of the claim predicated on procedural default and bar.

## VII.  EVIDENTIARY HEARING

A district court may hold an evidentiary hearing only when the petitioner has shown either that a claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or that the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii). The petitioner must also establish that the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have convicted him. 28 U.S.C. § 2254(e)(2)(B). Petitioner here has not met these requirements, and the Court has determined that no evidentiary hearing is necessary for disposition of the claims raised in this habeas proceeding.

18

## VIII.  CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 34) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.  Any and all pending motions are **DENIED AS MOOT**.  A certificate of appealability is **DENIED**.

Signed at Houston, Texas, on this the  2nd day of June, 2020.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE